IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kirk Thompson,                      :

          Plaintiff          :    Civil Action 2:08-cv-00701

   v.                               :    Judge Marbley

Michael J. Astrue, Commissioner
of Social Security,                 :    Magistrate Judge Abel

          Defendant
                                    :

**ORDER**

This matter is before the Court on plaintiff Kirk Thompson July 6, 2008 objections to Magistrate Judge Abel's June 8, 2009 Report and Recommendation. The Court, having reviewed the record *de novo*, determines that Kirk Thompson should be awarded benefits for the period from April 28, 2001 through the end of 2006. The Court further finds for the reasons set out below that the Commissioner's objections to the Report and Recommendation are without merit.

<u>Summary of Report and Recommendation</u>. Plaintiff Kirk Thompson asserts he became disabled in 2001 at age 35. In April 2001, Thompson was injured at work. While carrying drywall, he fell off of a porch and sprained his left ankle. Thompson subsequently developed reflex sympathetic dystrophy ("RSD") in his ankle. Dr. James J. Sardo, Thompson's treating pain specialist over a period of over four years, concluded in August 2005 that plaintiff was permanently and totally disabled. Dr. Janet L. Clark,

Thompson's treating psychologist, found that he suffers from persistent depression that markedly limits his ability to maintain concentration and attention over time. He is extremely limited in his ability to withstand the stress and pressures of day-to-day work. Nonetheless, the administrative law judge found that Thompson retained the ability perform, simple, repetitive unskilled work that requires no more than superficial contact with supervisors, co-workers and the general public.

The Magistrate Judge recommended that plaintiff be awarded benefits from April 28, 2001 through the end of 2006 after concluding that substantial evidence did not support the administrative law judge's decision that Thompson had the physical residual functional capacity to perform a limited range of sedentary work. The administrative law judge failed to indicate the medical opinion on which he relied to formulate the residual functional capacity. Although the administrative law judge stated he considered the opinion of the State Agency medical consultant, he indicated that he gave the opinion little weight because new evidence had been submitted subsequent to that opinion. The administrative law judge appeared to have primarily relied on his belief that plaintiff wanted to return to work.

The Magistrate Judge also found that in considering the opinion of Dr. Clark, Thompson's treating psychologist, the administrative did not accurately reflect the findings of Dr. Yerian, a examining psychologist. The administrative law judge had found that Dr. Clark's opinion was not entitled to much weight due to an apparent inconsistency with the Dr. Yerian's opinion. The Magistrate Judge also noted that the

administrative law judge failed to discuss the findings of Drs. Clark and Yerian that plaintiff was extremely limited or markedly limited in his ability to withstand the stress and pressures associated with day-to-day work activity.

The Magistrate Judge concluded that the administrative law judge also failed to provide his rationale for declining to give credence to Thompson's allegations of pain, making it impossible for him to determine if substantial evidence support that finding.

The Magistrate Judge recommended that plaintiff be awarded benefits based on the following:

> Thompson's treators diagnosed RSD and his long-term treating pain specialist has stated the opinion that he is disabled. The administrative law judge attempted to discount that opinion, but he did not support it by reference to contrary medical evidence. On the other hand, the administrative law judge's assertion that Dr. Sardo's opinion is not supported by his treatment notes does not fairly assess those notes.
> Contrary to the administrative law judge's assertion, those notes do not document that Thompson's pain complaints were greatly reduced when he took pain medication. Instead, they document that Thompson regularly took large doses of pain medication but mostly reported that his pain levels were 8-10 on a scale of 1-10. In addition to the physical pain caused by RSD, Thompson was a laborer who graduated from high school taking classes for the learning disabled. The psychological tests and reports from his treating psychologist and examining psychologists all demonstrate that Thompson has significant non-exertional impairments.

Doc. 16 at 30-31.

<u>The Commissioner's Objections</u>. The Commissioner argues that not all the essential factual issues have been resolved and that the record does not adequately establish that Thompson is entitled to benefits. The Commissioner maintains that in reaching his recommendation, the Magistrate Judge failed to acknowledge defects

3

raised by the administrative law judge in his review of the treating sources and other evidence rebutting plaintiff's claims of disability.

According to the Commissioner, the administrative law judge appropriately cited facts that diminished the weight of Dr. Sardo's opinion, including that he did not provide clinical support for his limitations. The Magistrate Judge neglected to raise the defects identified by the administrative law judge or to recognize other evidence rebutting plaintiff's claims of disability. The Magistrate Judge also failed to acknowledge that Dr. Sardo's treatment consisted of little more than prescribing medicine and that Dr. Sardo failed to explain the need for the specific limitations he recommended. Medications and other treatment modalities made Thompson functional. The Magistrate Judge also discounted the fact that plaintiff was looking for work in 2003 and in 2006, he indicated that he believed he was able to work, and Dr. Sardo failed to indicate otherwise. The Commissioner maintains that Dr. Sardo would not have permitted Thompson to seek or engage in work if he believed it was medically inappropriate.

The Commissioner also argues that Dr. Sardo's opinion on the issue of disability was contradicted by Dr. Kakde. Dr. Kakde recommended that plaintiff undergo a functional capacity evaluation and vocational rehabilitation. Dr. Gronback imposed no restrictions on plaintiff other than to note that he required the use of a cane or walker and was limited in his ability to stand and walk. State agency physicians concluded that

4

plaintiff could perform light work. According to the Commissioner, this shows that the evidence does not demonstrate that all essential factual issues have been resolved.

The Commissioner also argues that the Magistrate Judge erred in failing to recognize that plaintiff's activities of daily living contradicted the opinion of Dr. Clark and by concluding that the administrative law judge mischaracterized the findings of Dr. Yerian.

In evaluating plaintiff's credibility, the administrative law judge properly relied on the medical evidence showing pain relief and an ability to function, in addition to plaintiff's statements that he thought he could perform sedentary work. The Commissioner maintains that there is other evidence in the record, which the administrative law judge did not mention, that support his credibility finding. The Commissioner points to plaintiff's longstanding practice of walking three-quarters of a mile three times a week and the lack of objective evidence to support plaintiff's claim that RSD caused his whole body to ache.

<u>Discussion</u>. The Commissioner argues that the administrative law judge pointed to evidence which questioned the weight of Dr. Sardo's opinion. The administrative law judge indicated that Dr. Sardo failed to provide clinical support for his limitations. The Magistrate Judge accurately summarized Dr. Sardo's treatment of plaintiff as follows:

> On July 31, 2002, Dr. Sardo evaluated plaintiff. (R. 154-56.) Plaintiff described his pain as a constant aching, throbbing, shooting, stabbing, sharp, tender, burning, penetrating, nagging, numb sensation in the left ankle. He also reported continued back pain after the epidural shots. On physical examination, there was no evidence of any swelling, effusion or redness in the region of the left ankle. He had some slight movement of

5

the toes on the left foot. He had allodynia to light touch and pinprick from below the knee into the foot. There was a slight discoloration to the left foot.(R. 155.)

On August 27, 2002, Dr. Sardo noted that plaintiff had trouble with most activities of daily living. He also had difficulty sleeping. Thompson ambulated with a cane and used a wheelchair for long distances. He had swelling and sharp pains in his left ankle in addition to numbness and tingling. Dr. Sardo diagnosed left lower extremity RSD and depression. (R. 153.) On October 22, 2002, Thompson reported that his pain was a ten on a ten-point scale. (R. 152.) On November 19, 2002, Dr. Sardo indicated that plaintiff's depression was worsening. (R. 150.)

On December 17, 2002, Thompson reported persistent pain. He was no longer wearing a cast boot, but he had an ankle brace. He had some increased swelling. He had difficulty taking his pain medication because he was driving a lot. On examination, his gait was antaligic, favoring the left leg. He was tender in the left lower leg. There appeared to be about 2+ edema in the left lower leg. (R. 149.)

On January 28, 2003, Thompson had a new brace for his left ankle and heated socks. His pain increased with walking, standing, and driving. The pain lessened when he propped up his foot or soaked it in hot water. (R. 147.) On March 25, 2003, Thompson reported similar problems with activities of daily living, including walking, sitting, lying, bathing, dressing, and driving. (R. 145.)

On April 22, 2003, Thompson reported that Vicodin 4 helped. He continued to walk with a cane. He used an RS4 stimulator, which helped somewhat although he developed some tingling in his toes. (R. 142.) On May 20, 2003, Thompson identified his pain as a ten on a ten-point scale. He continued to wear a left ankle brace. (R. 141.) On June 17, 2003, Thompson indicated that he had difficulty continuing with vocational rehabilitation because of persistent pain. Dr. Sardo noted that plaintiff's depression was worsening. (R. 140.)

On July 22, 2003, Thompson reported that his pain was aggravated by walking and cold air, and it improved with resting, propping up his foot, or by not walking. He used a cane for ambulation. (R. 139.)

On September 9, 2003, Thompson complained of both his feet turning blue and increased pain. On examination, his feet were warm, and there was no swelling. There was a very minimal amount of ecchymosis just distal to the medial malleolus on the right side. He wore a left ankle air splint. (R. 130.) On September 16, 2003, plaintiff reported having frequent panic attacks. (R. 129.)

On October 14, 2003, Dr. Sardo noted that plaintiff was continuing to experience pain in his right foot. (R. 125.) On November 11, 2003,

plaintiff reported that he continued to smoke and that he tried to walk around his house. (R. 124.)

Dr. Sardo continued to treat plaintiff from December 9, 2003 through June 28, 2007. (R. 346-351, 378-92.) On October 7, 2004, there was no evidence of any swelling or color change, but there was allodynia to light touch. (R. 351.)

On November 4, 2004, Thompson reported ongoing pain across his lower leg. He struggled with insomnia and constipation. Thompson was instructed to continue using the ankle brace and cane for walking. (R. 239.) On December 30, 2004, plaintiff reported that his pain was a seven on a ten-point scale. He indicated that the medication was helping with his pain and allowing him to function. He continued to smoke a pack of cigarettes a day. Thompson used a wheelchair for going any distance. (R. 240.) On February 24, 2005, Thompson reported that he had increased swelling a few days ago. He rated his pain as an eight. On physical examination, his left lower limb was warm, and there was fairly good color. Allodynia was present. His peripheral pulses were intact. He had minimal movement of the left ankle. (R. 241.)

On April 7, 2005, plaintiff's pain level was at a nine. Thompson had been experiencing a burning sensation in his left leg. (R. 242.) On May 26, 2005, Thompson reported that he had been taking extra medication because it had not been providing as much relief. (R. 243.) On June 23, 2005, Dr. Sardo continued to report that the medication kept plaintiff functional. Thompson used a wheelchair when grocery shopping. (R. 244.) On July 21, 2005, Dr. Sardo indicated that plaintiff was undergoing whirlpool treatments and therapy. There was a mild duskiness to the left foot. (R. 245.)

In an August 3, 2005 letter to plaintiff's attorney, Dr. Sardo stated that Thompson's prognosis was poor and that he was permanently and totally disabled. (R. 237.)

On August 3, 2005, Dr. Sardo completed a medical assessment of Thompson's ability to do work-related activities. (R. 332-45.) Dr. Sardo opined that plaintiff could occasionally lift and/or carry five pounds, and he could frequently carry zero pounds. He could stand for a total of a half hour during an eight hour workday, and for five minutes without interruption. He could sit for a half hour without interruption and he could sit for a total of one hour in an eight-hour day. (R. 333.) Plaintiff needed to keep his foot elevated. (R. 334.) Dr. Sardo also indicated that Thompson should avoid heights, moving machinery, chemicals, temperature extremes, vibration, noise, and humidity based on his unstable gait or that it would result in increased pain. (R. 335.) He concluded that plaintiff did not retain the residual functional ability to

7

perform sedentary work. (R. 336.) In response to interrogatories, Dr. Sardo stated that depression has negatively impacted plaintiff's recovery and that pain is an emotional and sensory experience. (R. 339.)

On August 18, 2005, plaintiff had some mild duskiness to the left foot and leg. The skin blanched with pressure. There was mild allodynia at the dorsum of the left foot. Thompson reported increased muscle spasms. His depression improved when he had been out of the house. (R. 247.)

On May 30, 2006, Dr. Sardo indicated that there was discoloration of the left leg and foot and some hyperesthesias on the dorsum of the left foot. (R. 382.) On November 28, 2006, plaintiff reported a constant throbbing, steady, aching pain in his left leg. The medicine kept him only somewhat functional and he experienced breakthrough pain. (R. 380.) On February 22, 2007, Dr. Sardo noted that plaintiff was experiencing symptoms in his right leg. (R. 379.) On June 28, 2007, Dr. Sardo indicated that the spinal cord simulator trial had provided Thompson with significant relief. The plan was for a permanent simulator placement. (R. 378.)

Dr. Sardo sufficiently documented objective evidence of the severity of plaintiff's RSD. Although a spinal cord simulator trial provided Thompson with significant relief, he received this treatment in 2007, and the Magistrate Judge concluded that he was entitled to an award of benefits only through 2006.

The Commissioner contends that if Dr. Sardo believed Thompson was not capable of working or that it was contraindicated, his treatment notes would reflect this when he documented plaintiff's intent to look for work. Dr. Sardo's failure to indicate that plaintiff was not capable of working in 2003 does not contradict his later conclusions that plaintiff could not work. In 2006, Thompson stated that he might be able to perform sedentary activity, but Dr. Sardo restricted him to working only four hours a day. (R. 380.) Similarly, Dr. Kakde believed that Thompson could work for no more than two hours a day at a reduced sedentary level. (R. 177.) Neither of these

statements provide support for the administrative law judge's residual functional capacity evaluation because a residual functional capacity is a measure of what a person can on a sustained basis, i.e., 8 hours a day for 5 days a week. The administrative law judge rejected the opinion of the State Agency medical consultant. (R. 23.) Quite simply, the administrative law judge formulated a residual functional capacity without relying on the medical evidence in the record.

The Commissioner also maintains that the Magistrate Judge erred in stating that the administrative law judge mischaracterized Dr. Yerian's opinion when he indicated that Dr. Yerian found that Thompson was not significantly limited in his concentration. Dr. Yerian's report states:

> Mr. Thompson's mental ability to maintain attention and concentration to perform even simple repetitive tasks did not seem to be limited. He was not distractible or inattentive during the testing. However, *his persistence on task seems moderately limited due to his level of depression, fatigue, and anhedonia*. His pace and cognitive processing speed is slow relative to same-aged peers, and his level of psychomotor retardation and fatigue tend to slow his performance; *thus his ability to maintain pace on tasks is moderately limited*.

(R. 199)(emphasis added). To say that Dr. Yerian's findings demonstrate that Thompson is not significantly limited in his ability to maintain concentration does not accurately reflect his complete statement. The Commissioner also maintains that the administrative law judge was not required to adopt the limitations identified by Dr. Clark because they were inconsistent with plaintiff's reported daily activities. The administrative law judge formulated a residual functional capacity that concluded plaintiff could perform sedentary work without reliance on any medical evidence that

9

indicated plaintiff was capable of performing sedentary work. Whether or not the administrative law judge properly discounted the opinion of Dr. Clark does not change the outcome.

The Magistrate Judge also correctly concluded that the administrative law judge failed to provide his rationale for declining to give credence to Thompson's allegations of pain. The administrative law judge did not refer to any contrary medical evidence, and the Commissioner's reliance on evidence not explicitly referred to by the administrative law judge is misplaced.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. The decision of the Commissioner of Social Security is **REVERSED** and that Thompson be awarded benefits from April 28, 2001 through the end of 2006. If the Commissioner believes that Thompson's medical condition improved in 2007, then a new residual functional capacity should be formulated on remand.

s/Algenon L. Marbley
Algenon L. Marbley
United States District Judge
